In the Matter of the Application of FRANCIS A. BEATTIE and AGNES C. BEATTIE.

Petition of EDWARD P. BABCOCK, RICHARD J. O'CONNOR and AGNES M. O'CONNOR.

*(March 9, 1962.)*

CHRISTIE, J., sitting.

*Frank O'Donnell* for Appellees.

*James P. Collins* for Appellants.

Superior Court for New Castle County, No. 1169, C. A., 1961.

CHRISTIE, J.:

This case is before the Court in a Certiorari proceeding brought pursuant to 9 *Del. C.* § 2618 to review the action of the Board of Adjustment of New Castle County.

On February 26, 1954, a county building permit was issued to Francis A. and Agnes C. Beattie (the Beatties) pursuant to the County Building Code. The permit in effect gave the Beatties permission to build a masonry dwelling valued at $9,000 on Lots 21 and 22, Section C, Delaware Heights, near Centerville, Delaware.

At the time the building permit was issued there was no Zoning Code as to the area in question, but one was under consideration. However, the County Building Code which was then in effect and remains in effect provides that the Building Inspector may revoke a building permit "for failure to start construction for six months" or "failure to resume construction within six months of the date upon which work was suspended for any reason". Building Code, New Castle County § 104.23. There is no indication that the Building Inspector has revoked the permit under these provisions unless the stop-order issued in 1960 is interpreted as a revocation.

On September 28, 1954, the Zoning Code of New Castle County became effective, and the property in question was assigned a zoning classification of R-1-B. Lots 21 and 22, which together measure 50 feet by 175 feet, do not meet the minimum width, length, area, or sideyard requirements of this zoning classification.

The Beatties did almost no work on the lots in question from early 1955 until the middle of 1960, with the exception of filling and grading to raise the elevation of the lots, and building in 1956 a stone retaining wall along approximately 40 feet of one of the property lines.

Because of the Zoning Code it has been impossible since September 28, 1954 to obtain a building permit for the lots

in question. It is obvious, therefore, that the Beatties had no right to build unless the February 26, 1954 permit was still valid in 1960 when they resumed construction on the lots.

The Zoning Code of New Castle County contains the following saving clause in respect to non-conforming buildings:

"Nothing in this Code shall require any change in the plans, construction, or designated use of any building or part thereof, the construction of which shall be lawfully in progress at the time of passage of this Code, or for which a permit shall have been issued pursuant to law, provided construction shall be promptly and diligently prosecuted." (Art. XVII, Sec. 1).

In June 1960, Mr. Beattie consulted with the County Building Inspector regarding the validity of his permit which was then more than five years old, and obtained the Inspector's permission to proceed with construction under the old permit, provided that the Beatties would stop work and bring the matter before the Board of Adjustment if adjoining landowners objected. Mr. Beattie then excavated for the basement.

On July 9, 1960, the Building Inspector reviewed the matter again with Mr. Beattie and told him he could continue the work. On July 16, the foundation footings were installed and the basement walls begun. On July 18, the Building Inspector issued a stop-work order, marked "Wrong Zone", as a result of a protest to the Inspector by Mr. Babcock, an adjoining landowner and one of the appellants here. Shortly thereafter, Mr. Beattie again consulted with the Inspector and was advised he could continue the work. On July 28, the Inspector issued a second stop-work order on which was stated "This job is to stop until the court decision is made".

The Beatties appealed the stop-work order to the Board of Adjustment. They did not seek a variance to permit the construction of a non-conforming building. Rather the Beat-

ties rely entirely on whatever rights they may have under the old building permit.

After a hearing the Board vacated the Building Inspector's stop-work order and ruled that the Beatties may proceed with the construction. The adjoining landowners then took Certiorari in order to obtain a review of the Board's action in this Court.

The Board based its decision on a finding that the Beatties had spent $2,000 before adoption of the Zoning Code in reliance on the building permit and that this amount was substantial in relation to the $9,000 valuation placed on the finished dwelling. The $2,000 investment was largely for a well and sanitary system which was also used for another property owned by the Beatties.

One member of the Board dissented pointing out that the location of the well, the excavation for the sanitary system, and the location of electric power poles indicated that the Beatties did not intend to construct a dwelling and that the purpose of these facilities was to serve their existing buildings on adjacent property. He further reasoned that some filling and grading which the Beatties did enhanced the value of the adjacent property and concluded that these improvements were inconsistent with an intention to place a foundation on the lots.

The majority opinion of the Board makes no specific reference to the provisions in either the Building Code or the Zoning Code which deal with the problem then before it. Appellants had argued the applicability of the prompt and diligent provisions before the Board and maintained that construction of the dwelling had not been "promptly and diligently prosecuted" by the Beatties after adoption of the Zoning Code.

In the oral argument to this Court, Appellees maintained that the Board made a factual determination, in their favor,

on the question of prompt and diligent prosecution of construction, which is binding on appeal. Appellants contend that it is a question of law subject to review by this Court, and in the alternative, that if it is a factual issue or partially a factual issue, there is no evidence in the record to support the Board's finding.

The function of the Appellate Court in reviewing decisions of administrative agencies in statutory Certiorari proceedings has been set forth as follows by the Delaware Supreme Court in *Searles v. Darling*, 7 *Terry* 263, 83 *A*. 2d 96, 99 (1951):

"The fact that the statute says that the evidence taken before the court of record shall constitute 'a part of the proceedings upon which the determination of the court shall be made' causes us to believe that a proper record sent up by the Board would be a factor often controlling the disposition of the case by the Superior Court, but necessarily would not always constitute the entire basis for decision. If the record below shows that there was substantial evidence upon which the Board could properly have based its decision, while correctly applying the law to the facts, it would be the duty of the court to sustain the Board, even though the court would have decided otherwise had the matter come before it in the first instance. That is to say, the record sent up by the Board would control the issue unless there was abuse of discretion or error of law."

Thus, Delaware follows the general rule that factual determinations of an administrative agency are binding on appeal if supported by "substantial evidence" in the record, but that the Appellate Court reviews questions of law.

Any decision of the Board of Adjustment on a point specifically covered by provisions of the statute, the Building Code, or the Zoning Code should be based on findings under such provisions. *Application of Julian*, 3 *Storey* 175, 167 *A*. 2d 21 (Superior Court, 1960). However, in the

absence of such findings, the Court will review the record to determine whether there is evidence therein upon which the required findings could have been based.

Under the terms of the Zoning Code, the Beatties could legally complete the dwelling only if (1) they began actual construction before the effective date of the Zoning Code, or (2) they had a valid building permit before such date. In either case they were required to prosecute construction promply and diligently.

There is no explanation in the Zoning Code of what is meant by "prompt and diligent" prosecution of a building project and there has been no judicial interpretation of these provisions in Delaware. The words, however, are in common everyday use. To do something promptly is to do it without delay and with reasonable speed. To be diligent is to keep at the project and to apply reasonable and continuing effort thereto.

The construction here in question was a spare time project of the Beattie family. They planned to do most of the work themselves. Such a project would necessarily take much longer than the usual construction of a $9,000 house even though the Beatties are contractors. Furthermore, the Beatties had a number of understandable interruptions during the period in question.

In spite of these mitigating circumstances, I find no basis in the record for any finding that construction of the dwelling was promptly and diligently prosecuted after enactment of the Zoning Code. Only minor activity took place between early 1955 and the middle of 1960, when the first construction on the dwelling itself was begun. Most of the improvements prior to 1960 had value quite apart from the proposed dwelling.

The obvious purpose of zoning provisions is to prevent the construction of non-conforming buildings even where

construction had started unless the construction progresses with reasonable speed. It certainly was not intended that a permit for a non-conforming building remain valid although construction was dormant for four or five years.

If the prompt and diligent proviso of the Zoning Code were deemed to be inapplicable to projects already under construction when the Zoning Code was adopted, those holding a permit were still under a duty to act thereunder within a reasonable time. Even the beginning of construction does not hold a permit open indefinitely. The Building Code clearly indicates that a license may be revoked if it is not acted upon within six months or if construction is interrupted for more than six months. The Building Inspector was not required to revoke the permit at the end of the six-month period, but a delay of more than four years in the construction of a non-conforming building is not a reasonable delay under all the circumstances.

The Board apparently felt that the provisions of the Building Code as to the revocation of permits after six months were inapplicable and that the "promptly and diligently" proviso of the Zoning Code laid down a requirement only as to cases where a building permit had been issued but no construction had been undertaken. Under the Board's view of the applicable Code provision there was no obligation for those who had construction "lawfully in progress" at the time the Code became effective to proceed promptly and diligently.

The Board seems to have concluded that since the Beatties had expended about $2,000 on their $9,000 project before the Code became effective, this building was lawfully in progress when the Code was adopted and they had a right to continue. Only thus can the Board's failure to make a finding on promptness and diligence be explained.

The Board cited authority from other jurisdictions to the effect that a building permit, if valid when issued, remains

valid when there has been reliance thereon even after the subsequent adoption of a contrary zoning provision. In such cases the Courts often speak of "vested rights". *Deer Park Civic Ass'n v. City of Chicago*, 347 *Ill. App.* 346, 106 *N. E.* 2d 823; *Sun Oil Co. v. City of Clifton*, 16 *N. J. Super.* 265, 84 *A.* 2d 555; *City of Little Falls v. Fisk, Sup.*, 24 *N. Y. S.* 2d 460; *Herskovits v. Irwin*, 299 *Pa.* 155, 149 *A.* 195.

Under all the circumstances if any vested right existed in the Beatties by reason of the existing permit such vested right was a right to proceed provided they did so within a reasonable time. This they failed to do.

I conclude that the permit issued in 1954 under which the Beatties seek to build was invalid by June of 1960 under the applicable provisions of the Zoning Code by reason of the Beatties' delay in acting thereunder.

The decision of the Board of Adjustment is reversed. The parties will confer with the Court on the implementation of this decision.