**UNITED STATES of America, Plaintiff,**

v.

**Roy GARNER, Defendant.**

**No. 78–20140.**

United States District Court,
W. D. Tennessee, W. D.

Nov. 13, 1978.

Order Oct. 11, 1979.

Devon L. Gosnell, Asst. U. S. Atty., Memphis, Tenn., for plaintiff.

Edward C. Duke, Federal Defender, Memphis, Tenn., for defendant.

## ORDER ON MOTION TO DISMISS INDICTMENT

WELLFORD, District Judge.

In February, 1974, movant Roy Garner was indicted and convicted on three counts of passing and uttering altered Federal Reserve Notes in violation of 18 U.S.C. § 472 and sentenced by Judge McRae of this Court to two years on one count with two years probation following and sentence suspended on the other two counts. Movant began his probation upon release from prison in August, 1976, but in late 1977 committed a state offense for which Judge McRae found him guilty of probation violation on January 17, 1978. Garner's probation was revoked and he was sentenced, based on count two of his original offense, to nine months incarceration with two years probation to follow. The Court's Judgment and Commitment Order granted leave for Garner to report to the institution designated for service of the sentence at his own expense. Garner was to appear in the Clerk's Office to acknowledge receipt and then surrender himself to the Marshal. The Order to this effect was mailed to Garner on January 30, but he did not appear nor did he surrender himself. On March 17, he was found and arrested in Grand Rapids, Michigan, and subsequently indicted for violation of 18 U.S.C. § 3150.

The motion to dismiss essentially challenges the applicability of the provisions of Chapter 207 of Title 18, USC, specifically 18 U.S.C. §§ 3141–3152 and, therefore, the penalty provided by § 3150, to his circumstances. Section 3150 establishes a penalty of up to $5,000 and 5 years imprisonment for anyone released under the chapter who "willfully fails to appear before any court or judicial officer as required." Movant contends that he was not released pursuant to § 3148 at the time in question as charged in the indictment.

18 U.S.C. § 3148 extends the non-capital pretrial release provisions of § 3146 to a person:

> . . . (1) who is charged with an offense punishable by death, or (2) who has been convicted of an offense and is either awaiting sentence . . . or has filed an appeal or a petition for a writ of certiorari . . .

Is Garner's status under the statutory language "awaiting sentence" encompassed in this particular situation? Garner contends that he could not have been released pursuant to the Chapter 207 release provisions at all, since he was brought before Judge McRae on the probation violation charge by summons, not by warrant and was never in custody on the probation violation. Garner specifically contends that Judge McRae did not issue an order setting forth conditions of any release or apprise him of the consequences of violation as required by § 3146(c); and that he did not sign any Bail Reform Act Form No. 2 acknowledging notice of such conditions and consequences during the 1978 hearing.

The government contends, on the other hand, that a sentenced defendant's failure to comply with the order constitutes willful failure to appear before a court or judicial officer punishable by § 3150. The more recent reported cases interpreting this section have rejected a narrow reading of the section. *United States v. Harris,* 544 F.2d 947 (9th Cir. 1976); *Annot.,* 14 A.L.R. Fed. 927 (1973); *but see United States v. Wray,* 369 F.Supp. 118 (W.D.Mo.1973). When the sentencing judge orders surrender to the marshal, the latter is essentially made a "judicial officer" for the limited purpose of assuming custody. *Harris, supra.* Failure to keep a regular appointment with a probation officer, however, is not a § 3150 violation. *United States v. Clark,* 412 F.2d 885 (5th Cir. 1969). *See also United States v. Capen,* 571 F.2d 374 (7th Cir. 1978).

■ If Garner were released under Chapter 207, 18 U.S.C. §§ 3141 *et seq.,* his indictment under § 3150 for violation of Judge McRae's order is not subject to dismissal as insufficient under § 3146(c). The transcript of the sentencing hearing contains the following:

"THE COURT: . . . I will be willing to let him report so he won't have to go into jail today, but this means he will have to go when they notify him. Do you understand that Mr. Garner?

DEFENDANT GARNER: I correctly understand what you are saying, but [inquires back as to duration of sentence].

THE COURT: The Marshal will call you and you had better be here when he tells you to. And if you are not you are in serious trouble. We are not talking about something like this [9 months] if you don't show up.

DEFENDANT GARNER: Yes, sir.

THE COURT: Do you understand?

DEFENDANT GARNER: Yes, sir."

The government contends that Garner had notice of the consequences of failure to appear, as witnessed by his signature on the original Bail Form accomplishing his release pending trial for forging and uttering in 1973, and that this notice "was sufficient to bring him under the provisions of the Bail Reform Act for all future proceedings in connection with that charge."

The few reported decisions on this point hold that these cautionary provisions in § 3146(c) are not a prerequisite to a § 3150 prosecution for failure to appear pursuant to court order. *See United States v. De-Pugh,* 434 F.2d 548 (8th Cir. 1970), *cert. den.,* 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971). The court in *DePugh* also based its holding on the clear indication in the legislative history of § 3146 that the warnings were provided as an additional deterrent to bail jumping and not as a prerequisite to suit. *See also United States v. Cardillo,* 473 F.2d 325 (4th Cir. 1973). The Court concludes that Garner's failure to sign new Bail Reform Act papers is no bar to the indictment.

Was Garner released pursuant to Chapter 207 when he failed to comply with Judge McRae's order? The defendant apparently views that determination as turning on whether he was in custody at the time of his appearance, and his counsel argues that since he was summoned to the probation hearing, he was not in custody. While Chapter 207 does not expressly tie its provisions to the status of custody, the companion Federal Rules of Criminal Procedure, at Rule 46, sets out Chapter 207 as authorization for release "from custody." The Judge's Order in January of 1978 that Garner be released on his own recognizance at the conclusion of the revocation hearing was effectuated by a notation

"Bond ___ROR___"
Order of Court

at the bottom of the probation officer's prayer for summons. This act placed Garner under Chapter 207 regardless of his status prior to the hearing.

■ Garner remained in custody from the time of his release from confinement through the January, 1978, hearing on probation violation by virtue of his status of probation, which is a statutory suspension of the execution or imposition of sentence. 18 U.S.C. § 3651. The sentencing court may revoke or modify any condition, or may change the period, of probation, and retains jurisdiction over the probationer throughout the period of probation. 18 U.S.C. §§ 3651, 3653. A probation officer may arrest the probationer for cause without a warrant at any time within the period. Upon a finding of violation, probation may be revoked and the probationer required to serve the sentence imposed, or any lesser sentence; if imposition of sentence was suspended, the court may impose any sentence which might originally have been imposed. 18 U.S.C. § 3653.

■ Neither the Bail Reform Act nor any other statute sets out the precise dimensions of federal "custody." Probationary status has been held sufficient custody to invoke the protection of the writ of habeas corpus for federal as well as state prisoners. *United States v. Re,* 372 F.2d 641 (2d

**4**

Cir. 1967), *cert. den.,* 388 U.S. 912, 87 S.Ct. 2112, 18 L.Ed.2d 1352 (1967); *Benson v. California,* 328 F.2d 159 (9th Cir. 1964); *Drollinger v. Milligan,* 552 F.2d 1220 (7th Cir. 1977). In fact, even a prisoner released on his own recognizance is sufficiently in custody to be eligible for the protection of the Great Writ. *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973). Parole, which functionally resembles probation with respect to its impediments on liberty, has been held to be custody, *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), and parole violation constitutes the offense of escape or attempted escape from the custody of the United States under 18 U.S.C. § 751, *United States v. Franklin,* 440 F.2d 1210 (7th Cir. 1971).

■ The probation revocation proceedings against Garner were initiated by a report by his probation officer alleging a violation of conditions of release, and praying for issuance of a summons. It is unclear whether this form, which is unique to the probation program, constitutes a "complaint" or an "information" within the meaning of the Federal Rules of Criminal Procedure because it contains a "written statement of the essential facts constituting the offense charged," equivalent to an information under Rule 7. In any event, both Rules 4 and 9 provide for procuring a defendant's presence by arrest or summons, either upon complaint or upon information or indictment. A defendant summoned to appear in answer to a complaint or information against him and who appears in the presence of the court, clerk, and marshal is at that time sufficiently in custody to activate the Chapter 207 release provisions. A summons effects judicial jurisdiction over a defendant and is functionally equivalent to custody for bail purposes.

The motion to dismiss is therefore denied.